UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DENNIS DOUGHERTY and CLIFTON HOLLOWAY, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br>v.<br><br>AHOLD DELHAIZE USA SERVICES, LLC, FOOD LIONS, LLC, AND GIANT FOOD, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT – CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Dennis Dougherty and Clifton Holloway ("Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), file this Class Action Complaint ("Complaint") against Defendants Ahold Delhaize USA Services, LLC ("Ahold"), Food Lion, LLC ("Food Lion") and Giant Food, LLC ("Giant Food"). (collectively, "Defendants") and complains and alleges upon personal knowledge as to themselves and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiffs bring this class action on behalf of all persons who entrusted Defendants with sensitive personally identifiable information ("PII") and protected health information ("PHI", collectively, "Private Information") that was impacted in a data breach that Defendants publicly disclosed in June 2025.

2. The Private Information reportedly exposed in the breach includes some of the most sensitive types of data that cybercriminals seek in order to commit fraud and identity theft. As a result of Defendants' negligence, from approximately November 5, 2024, and November 6, 2024, cybercriminals were able to gain access to Defendants' internal U.S. business systems, which

contain data records and sensitive and valuable Private Information (the "Data Breach"). On information and belief, information disclosed in the Data Breach includes but is not limited to names or other personal identifiers, contact information (postal and email address, and telephone number, health information, social security numbers, driver's license numbers, passport, financial account information, and employment related information.[1]

3. Defendant Ahold Delhaize is one of the largest food retails in the United States, Europe, and Indonesia with over $104 billion in sales and 393,000 associates working in over 9,400 local stores.[2]

4. Defendant Ahold Delhaize USA is the parent company of Food Lion, Giant Food, The GIANT Company, Hannaford and Stop & Shop.[3] Defendants and their affiliates jointly operate the largest grocery retail group on the East Coast and fourth largest in the nation .[4]

5. According to Defendants' report to the Office of the Maine Attorney General, a total of 2,242,521 individuals were affected in the Data Breach.[5]

6. Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes, including opening new financial information in Class members'

---

[1] *See* Letter sent by Ahold Delhaize USA, LLC to Plaintiff, Notice of Data Security Incident (June 26, 2025) (attached as Exhibit A) ("Notice Letter"); Sergiu Gatlan, *Retail Gian Ahold Delhaize says data breach affects 2.2 million people*, BLEEPINGCOMPUTER (June 27, 2025) https://www.bleepingcomputer.com/news/security/retail-giant-ahold-delhaize-says-data-breach-affects-22-million-people/.

[2] Gatlan, *supra* n.2.

[3] *See About Us*, AHOLD DELHAIZE USA., https://www.adusa.com/ (last visited July 8, 2025,

[4] *Id.*

[5] Office of the Maine Attorney General, Data Breach Notifications, available at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792a1252b4f8318/b17963fc-3806-430e-b28ebac47eb73a8b.html (last accessed July 9, 2025).

names, taking out loans in Class members' names, using Class members' names to obtain medical services, and using Class members' Private Information to target other phishing and hacking intrusions.

7. Defendants owed a non-delegable duty to Plaintiffs and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their Private Information against unauthorized access and disclosure. Defendants breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Plaintiffs and Class Members' Private Information from unauthorized access and disclosure.

8. As a result of Defendants' inadequate security and breach of their duties and obligations, the Data Breach occurred, and Plaintiffs' and Class members' Private Information was accessed and disclosed. This action seeks to remedy these failings and the harm caused to Plaintiffs and Class members as a result. Plaintiffs bring this action on behalf of themselves and all persons whose Private Information was exposed as a result of the Data Breach.

9. As a result of the Data Breach, Plaintiffs and Class members have been exposed to a heightened and imminent risk of financial fraud and identity theft. Plaintiffs and Class members must now and in the future closely monitor their financial accounts to guard against identity theft.

10. Plaintiffs seek remedies including, but not limited to, compensatory damages, treble damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief, including improvements to Defendants' data security system, future annual audits, and adequate credit monitoring services funded by Defendants.

11. Plaintiffs, on behalf of themselves and all other Class members, asserts claims for negligence, negligence per se, breach of fiduciary duty, and breach of implied contract, and seeks

declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

12. Plaintiff Dennis Dougherty resides in Philadelphia County, Pennsylvania. Mr. Dougherty was an employee of Giant and provided his PII to Defendants as a condition of his employment. On or around July 7, 2025, Mr. Dougherty received a notice dated June 26, 2025, notifying him of the Data Breach and that his name or other personal identifiers, contact information (postal and email address, and telephone number, health information, social security numbers, driver's license numbers, passport, financial account information, and employment related information were exposed due to the Data Breach ("Notice Letter").[6]

13. Plaintiff Clifton Holloway resides in Henry County Georgia. Mr. Holloway was an employee for Food Lion and provided his Private Information to Defendants as a condition of his employment. On or around July 7, 2025, Mr. Holloway received a notice notifying him of the Data Breach and that his name or other personal identifiers, contact information (postal and email address, and telephone number, health information, social security numbers, driver's license numbers, passport, financial account information, and employment related information were exposed due to the Data Breach.

14. After the Data Breach, Plaintiffs have been forced to spend time and money addressing and attempting to mitigate further harm and injury resulting from the Data Breach. Plaintiffs have also suffered emotionally over the stress resulting from the Data Breach and his substantially increased risk of identity theft.

---

[6] *See* Notice Letter, *supra* n.2.

15. Had Plaintiffs known that Defendants would not adequately protect their and Class members' Private Information, they would not have entered into an employment relationship with Defendants or any of their affiliates and would not have provided their Private Information to Defendants or any of their affiliates.

16. At all relevant times, Plaintiffs are and continue to be a member of the Class.

17. Defendant Ahold is a limited liability corporation that maintains its headquarters at2110 Executive Dr, Salisbury, North Carolina, 28147.

18. Defendant Food Lion is a Limited Liability Company that maintains its headquarters at 2110 Executive Dr, Salisbury, North Carolina, 28147.

19. Defendant Giant Food's is a Limited Liability Company with its headquarters at 2110 Executive Dr, Salisbury, North Carolina, 28147.

## **JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2) because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendants' citizenship, and (c) the aggregate matter in controversy exceeds $5,000,000, exclusive of interests and costs.

21. This Court has general personal jurisdiction over Defendants because Defendants are citizens of North Carolina. Moreover, Defendants have sufficient minimum contacts in the State, and Defendants engaged in the conduct underlying this action in North Carolina, including the collection, storage, and inadequate safeguarding of Plaintiffs' and Class members' Private Information. Defendants intentionally availed themselves of this jurisdiction by marketing and selling products and services and accepting and processing payments for those products and services within the State.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiffs' claims occurred within this District, and Defendants do business in this Judicial District.

## FACTUAL ALLEGATIONS

### *Overview of Defendants*

23. Defendants Ahold and its affiliates operate the largest the largest grocery retail group on the east coast and the fourth largest in the United States.[7]

24. Plaintiffs and Class members are current and former employees of Defendants.

25. To obtain an employment relationship with Defendants, employees like Plaintiffs and Class members are required to, and did, provide Defendants directly with sensitive Private Information.

26. In the regular course of their business, Defendants collect, store, and maintain the Private Information they receive from Plaintiffs and Class Members.

27. By creating and maintaining massive repositories of Private Information, Defendants have provided a particularly lucrative target for data thieves looking to obtain, misuse, or sell such data.

### *The Data Breach and Notice Letter*

28. Between approximately November 5, 2024, and November 6, 2024, the Private Information of current and former employees were leaked due to an internal U.S. business system breach.[8]

---

[7] Gatlan, *supra* n.2.

[8] *See Data Breach Entry*, OFF. OF MAINE ATT.'Y GEN., https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-

29. Specifically, on approximately November 6, 2024, Defendants detected the Data Breach.[9] After an internal investigation, Defendants determined that certain information on their internal U.S. business systems was exposed between November 5 and November 6, 2024.[10]

30. After their review of impacted data, Defendants confirmed that some of the impacted filed include internal employment records, including but not limited to, names or other personal identifiers, contact information (postal and email address, and telephone number, health information, social security numbers, driver's license numbers, passport, financial account information, and employment related information .[11]

31. On June 26, 2025, Defendant Ahold issued a notice of public disclosure about the Data Breach and began sending notice letters to individuals impacted.

32. While Defendants claim in their Notice Letter that they "took immediate action to secure our environment, activated [its] remediation and recovery efforts, and launched a thorough investigation in partnership with third-party cybersecurity specialists to determine the nature and scope of the incident[,]" Defendants fail to further specify those purported actions or efforts.[12]

33. Defendants waited over seven months from the date they learned of the Data Breach to notify the affected individuals.

---

a1252b4f8318/b17963fc-3806-430e-b28e-bac47eb73a8b.html (last visited July 8, 2025) (data breach report submitted by Defendant); Notice Letter, *supra* n.2.

[9] Notice Letter, *supra* n.2.

[10] *Id.*

[11] *Id;* Gatlan, *supra* n.2.

[12] *Id*.

34. To date, Defendants have not disclosed crucial information, including, but not limited to, the identity of the hacking group responsible for the Data Breach, how the cybercriminals were able to exploit vulnerabilities in Defendants' IT security systems, or any specific steps taken by Defendants to safeguard their systems.

35. Defendants did not use reasonable security procedures to safeguard the sensitive information of Plaintiffs and Class Members.

36. Defendants' systems hacked by cybercriminals contained Plaintiffs' and Class members' PII that was accessible, unencrypted, unprotected, and vulnerable to acquisition and/or exfiltration by the unauthorized actor.

37. Plaintiffs and Class members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligation to keep such information confidential and secure from unauthorized access.

38. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class members' Private Information, Defendants assumed legal and equitable duties and knew, or should have known, that they were responsible for protecting Plaintiffs' and Class members' Private Information from unauthorized disclosure.

***Defendants Knew That Criminals Target PII.***

39. At all relevant times, Defendants knew or should have known that Plaintiffs' and all other Class members' Private Information was a target for malicious actors. Despite such knowledge, Defendants failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiffs' and Class members' Private Information from cyber-attacks that Defendants should have anticipated and guarded against.

40. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches preceding the date of the Data Breach, which has been widely reported in the last few years.

41. In the wake of the significant rise in data breaches, the Federal Trade Commission has also issued an abundance of guidance for companies and institutions that maintain individuals' PII.[13]

42. As a result of the notoriety of cyberattacks on systems like Defendants', several other government entities have also issued warnings to potential targets so that they may be alerted and prepared for a potential attack like the Data Breach.

43. In light of the high-profile data breaches in similar industries and large businesses, and a wealth of relevant guidance and news reports at Defendants' disposal, Defendants knew or should have known that cybercriminals would target their electronic records and employees' PII.

44. These data breaches have been a consistent problem for the past several years, providing Defendants sufficient time and notice to improve the security of their systems and engage in stronger, more comprehensive cybersecurity practices.

---

[13] *See, e.g.*, *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N., https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last visited July 9, 2025).

45. PII/PHI is a valuable property right.[14] The value of PII/PHI as a commodity is measurable.[15] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[16] American companies are estimated to have spent over $19 billion acquiring consumers' personal data in 2018.[17] In fact, PII/PHI is so valuable to identity thieves that once disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

46. As a result of its real value and the recent large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, Social Security numbers, and other PII directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

47. Consumers place a high value on the privacy of their PII. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies

---

[14] *See* Marc van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFO. AND COMMC'N. TECH. 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . .").

[15] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[16] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[17] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[18]

48. Given these factors, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

49. Therefore, Defendants clearly knew or should have known of the risks of data breaches and thus should have ensured that adequate protections were in place, particularly given the nature of the PII and PHI stored in their unprotected files and the massive amount of PII and PHI they maintain.

***Theft of PII and PHI has Grave and Lasting Consequences for Victims.***

50. Data breaches are more than just technical violations of their victims' rights. By accessing a victim's personal information, the cybercriminal can ransack the victim's life: withdraw funds from bank accounts, get new credit cards or loans in the victim's name, lock the victim out of their financial or social media accounts, send out fraudulent communications masquerading as the victim, file false tax returns, destroy their credit rating, and more.[19]

51. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[20] In addition, identity thieves

---

[18] Janice Y. Tsai, et al., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[19] *See* Laura Pennington, *Recent Data Breach Trends Mean Your Info Was Likely Stolen Last Year*, TOP CLASS ACTIONS (Jan. 28, 2019), https://topclassactions.com/lawsuit-settlements/privacy/data-breach/875438-recent-data-breach/.

[20] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes

may obtain a job using the victim's Social Security Number, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[21]

52. Identity theft victims are frequently required to spend many hours and large sums of money repairing the adverse impact on their credit.

53. As the United States Government Accountability Office noted in a June 2007 report on data breaches ("GAO Report"), identity thieves use identifying data such as Social Security Numbers to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[22] As the GAO Report states, this type of identity theft is more harmful than any other because it often takes time for the victim to become aware of the theft, and the theft can adversely impact the victim's credit rating.

54. In addition, the GAO Report states that victims of this type of identity theft will face "substantial costs and inconveniences repairing damage to their credit records" and their "good name."[23]

---

"identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official state or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[21] *See Warning Signs of Identity Theft*, FED. TRADE COMM'N, https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last visited May 12, 2024).

[22] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOV'T ACCOUNTABILITY OFF. (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[23] *Id.* at 2, 9.

55. There may be a time lag between when PII is stolen and when it is used.[24] According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

56. Such personal information is such a crucial commodity to identity thieves that once the information has been compromised, criminals often trade it on the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cybercriminals have openly posted stolen credit card numbers, Social Security Numbers, and other PII directly on various Internet websites, making the information publicly available.

57. Due to the highly sensitive nature of Social Security numbers, theft of Social Security numbers in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who companies employ to find flaws in their computer systems, stating, "If I have your name and your Social Security number and you haven't gotten a credit freeze yet, you're easy pickings."[26]

---

[24] For example, on average, it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information. John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9, 12 (2019), https://www.iiisci.org/Journal/PDV/sci/pdfs/IP069LL19.pdf.

[25] U.S. GOV'T ACCOUNTABILITY OFF., *supra* n.22 at 29 (emphasis added).

[26] Patrick Lucas Austin, *'It is Absurd.' Data Breaches Show It's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019, 3:39 P.M.), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

58. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft, and some need over a year.[27]

59. Plaintiffs and Class members must vigilantly monitor their financial accounts and their family members' accounts for many years to come.

60. It is within this context that Plaintiffs and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

***Damages Sustained by Plaintiffs and the Other Class Members***

61. Plaintiffs are very careful about sharing their sensitive PII/PHI. Plaintiffs have never knowingly transmitted unencrypted PII/PHI over the internet or any other unsecured source.

62. Because of the Data Breach, Defendants directed Plaintiffs to take certain steps to protect their PII/PHI and otherwise mitigate their damages.

63. Because of the Data Breach, Plaintiffs spent time dealing with the consequences of the Data Breach. This time was spent at Defendants' direction by way of the Data Breach notice where Defendants recommended that Plaintiffs mitigate their damages by, among other things, monitoring their accounts for fraudulent activity.

---

[27] *2021 Consumer Aftermath Report: How Identity Crimes Impact Victims, Their Families, Friends and Workplaces*, IDENTITY THEFT RES. CTR., https://efraudprevention.com/pub/ITRC_2021_Consumer_Aftermath_Report.pdf (last visited May 12, 2024).

64. Plaintiff Dougherty experienced various fraudulent activities, including purchases made through his PayPal account that he did not authorize, and an increasing number of spam calls and messages.

65. Plaintiffs suffered emotionally over the stress resulting from the Data Breach and her substantially increased risk of identity theft, such as the possibility of criminals using their PII/PHI to open bank accounts or commit other frauds.

66. Plaintiffs suffered actual injury in the form of damages to and diminution in the value of Plaintiffs' PII/PHI that Plaintiffs entrusted to Defendants, which was compromised because of the Data Breach. Plaintiffs suffered lost time, annoyance, interference, insecurity, and inconvenience because of the Data Breach and has increased concerns for the loss of their privacy.

67. Plaintiffs and all other Class members have suffered injury and damages, including, but not limited to (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII and PHI; (iii) deprivation of the value of their PII and PHI, for which there is a well-established national and international market; (iv) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft and medical identity theft they face and will continue to face; and (v) overpayment for the services that were received without adequate data security.

## CLASS ACTION ALLEGATIONS

68. This action is brought and may be properly maintained as a class action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

69. Plaintiffs bring this action on behalf of themselves and all members of the following Class of similarly situated persons:

> All individuals in the United States whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach, including all who were sent a notice of the Data Breach.

70. Plaintiffs reserve the right to amend the above definition or to propose other or additional classes in subsequent pleadings and/or motions for class certification.

71. Plaintiffs are members of the Class.

72. Excluded from the Class are Defendants, their affiliates, parents, subsidiaries, officers, agents, directors, the judge(s) presiding over this matter, and the clerks of said judge(s).

73. This action seeks both injunctive relief and damages.

74. Plaintiffs and the Class satisfy the requirements for class certification for the following reasons:

75. **Numerosity of the Class.** The members in the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. While the exact number of Class members is unknown at this time, Class members are readily identifiable in Defendants' records, which will be a subject of discovery. Upon information and belief, there are tens of thousands of Class members in the Class.

76. **Common Questions of Law and Fact.** There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether Defendants' data security systems prior to the Data Breach met the requirements of relevant laws;
b. Whether Defendants' data security systems prior to the Data Breach met industry standards;
c. Whether Defendants owed a duty to Plaintiffs and Class members to safeguard their PII;
d. Whether Defendants breached their duty to Plaintiffs and Class members to safeguard their PII;
e. Whether Defendants failed to provide timely and adequate notice of the Data Breach to Plaintiffs and Class members;

f. Whether Plaintiffs' and Class members' PII was compromised in the Data Breach;
g. Whether Plaintiffs and Class members are entitled to injunctive relief; and
h. Whether Plaintiffs and Class members are entitled to damages as a result of Defendants' conduct.

77. **Typicality.** The claims or defenses of Plaintiffs are typical of the claims or defenses of the proposed Class because Plaintiffs' claims are based upon the same legal theories and violations of law. Plaintiffs and Class members all had their PII stolen in the Data Breach. Plaintiffs' grievances, like the proposed Class members' grievances, all arise out of the same business practices and course of conduct by Defendants.

78. **Adequacy of Representation.** Plaintiffs will fairly and adequately represent the Class on whose behalf this action is prosecuted. His interests do not conflict with the interests of the Class.

79. Plaintiffs and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this Complaint. In particular, FBFG has been appointed as lead counsel in several complex class actions across the country and has secured numerous favorable judgments in favor of its clients, including in cases involving data breaches. Plaintiffs' Counsel are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class members. Finally, Plaintiffs' Counsel possess the financial resources necessary to ensure that a lack of financial capacity will not hamper the litigation and is willing to absorb the costs of the litigation.

80. **Predominance.** The common issues identified above arising from Defendants' conduct predominate over any issues affecting only individual Class members. The common issues hinge on Defendants' common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs on behalf of himself and all other Class members. Individual questions, if

any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

81. **Superiority.** A class action is superior to any other available method for adjudicating this controversy. The proposed class action is the surest way to fairly and expeditiously compensate such a large number of injured persons, to keep the courts from becoming paralyzed by hundreds -- if not thousands -- of repetitive cases, and to reduce transaction costs so that the injured Class members can obtain the most compensation possible.

82. Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

a. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions. Many members of the Class are not in the position to incur the expense and hardship of retaining their own counsel to prosecute individual actions, which, in any event, might cause inconsistent results.

b. When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class. This will promote global relief and judicial efficiency in that the liability of Defendants to all Class members, in terms of monetary damages due and terms of equitable relief, can be determined in this single proceeding rather than in multiple individual proceedings where there will be a risk of inconsistent and varying results.

c. A class action will permit an orderly and expeditious administration of the Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions. If Class members are forced to bring individual suits, the transactional costs, including those incurred by Defendants, will increase dramatically, and the courts will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with identical fact patterns and the same legal issues. A class action will promote a global resolution and will promote uniformity of relief to the Class members and Defendants.

d. This lawsuit presents no difficulties that would impede its management by the Court as a class action. The class certification issues can be easily determined because the Class includes only current and former employees of Defendants, the legal and factual issues are narrow and easily defined, and the Class membership is limited. The Class does not contain so many persons that would make the Class notice procedures unworkable or overly expensive. The identity of the Class

members can be identified from Defendants' records, such that direct notice to the Class members would be appropriate.

83. **Injunctive relief.** Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive or equitable relief on a class-wide basis.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

84. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

85. As a condition of engaging in employment with Defendants, Plaintiffs and Class members were required to and did provide Defendants with their Private Information.

86. By collecting and storing their Private Information, at all times relevant, Defendants owed a duty to Plaintiffs and all other Class members to exercise reasonable care in safeguarding and protecting the Private Information in their possession, custody, or control.

87. Defendants owed a duty of care to Plaintiffs and Class members to provide data security consistent with statutory and industry standards and to ensure that their systems and networks and the personnel responsible for them adequately protected the Private Information.

88. Defendants knew the risks of collecting and storing Plaintiffs' and all other Class members' Private Information and the importance of maintaining secure systems. Defendants knew of the many data breaches that targeted companies that store Private Information in recent years.

89. Given the nature of Defendants' businesses, the sensitivity and value of the Private Information they maintain, and the resources at their disposal, Defendants should have identified the vulnerabilities in their systems and prevented the Data Breach from occurring.

90. Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the Private Information entrusted to them -- including Plaintiffs' and Class members' Private Information.

91. Plaintiffs and Class members are a well-defined, foreseeable, and probable group of employees that Defendants were aware, or should have been aware, could be injured by inadequate data security measures.

92. Plaintiffs and Class members have no ability to protect their Private Information that was or remains in Defendants' possession.

93. It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class members' Private Information to unauthorized individuals.

94. But for Defendants' negligent conduct and breach of the above-described duties owed to Plaintiffs and Class members, their Private Information would not have been compromised.

95. Defendants' conduct was grossly negligent and departed from reasonable standards of care, including but not limited to failing to adequately protect Plaintiffs' and Class members' Private Information and failing to provide them with timely notice that their Private Information had been compromised.

96. Neither Plaintiffs nor Class members contributed to the Data Breach and subsequent misuse of their Private Information as described in this Complaint.

97. By failing to provide timely and complete notification of the Data Breach to Plaintiffs and Class members, Defendants prevented them from proactively taking steps to secure their Private Information and mitigate the associated threats.

98. As a result of Defendants' above-described wrongful actions, inaction, and lack of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and all other Class members have suffered and will continue to suffer economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) deprivation of the value of their Private Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

**COUNT II**
**NEGLIGENCE PER SE**

99. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

100. Defendants had duties by statute to ensure that all information they collected and stored was secure and that they maintained adequate and commercially reasonable data security practices to ensure the protection of Plaintiffs' and Class members' Private Information.

101. Defendants' duties arise from, *inter alia*, Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a)(1) ("FTCA"), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendants, of failing to employ reasonable measures to protect and secure the Private Information.

102. The FTC has published numerous guides for businesses that highlight the importance of implementing reasonable data security practices. In 2016, the FTC updated its publication establishing cybersecurity guidelines for businesses, which makes thorough recommendations, including, but not limited to, for businesses to protect the personal customer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[28]

103. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA. Orders resulting from these actions further clarify the measures businesses such as Defendants must take to meet their data security obligations and effectively put Defendants on notice of these standards.

---

[28] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N. (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

104. Defendants violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiffs' and all Class members' Private Information and not complying with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtain and store, and the foreseeable consequences of a data breach involving PII and PHI, including, specifically, the substantial damages that would result to Plaintiffs and other Class members.

105. Defendants' violation of the FTCA constitutes negligence per se.

106. Plaintiffs and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

107. The harm occurring as a result of the Data Breach is the type of harm against which Section 5 of the FTCA was intended to guard.

108. It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiffs' and Class members' Private Information to unauthorized individuals.

109. The injury and harm that Plaintiffs and the other Class members suffered was the direct and proximate result of Defendants' violation of Section 5 of the FTCA. Plaintiffs and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private

Information; (iv) deprivation of the value of their Private Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

110. Defendants' violation of the FTCA constitutes negligence *per se* for purposes of establishing the duty and breach elements of Plaintiffs' negligence claim. Those statutes were designed to protect a group to which Plaintiffs belong and to prevent the type of harm that resulted from the Data Breach.

111. Defendants owed a duty of care to Plaintiffs and the members of the Class because they were foreseeable and probable victims of any inadequate security practices.

112. It was foreseeable that Defendants' failure to use reasonable measures to protect PII and PHI and provide timely notice of the Data Breach would result in injury to Plaintiffs and other Class members. Further, the breach of security, unauthorized access, and resulting injury to Plaintiffs and the members of the Class were reasonably foreseeable.

113. It was therefore foreseeable that the failure to adequately safeguard PII and PIH would result in one or more of the following injuries to Plaintiffs and the members of the proposed Class: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the deep web black market; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements,

credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## <u>COUNT III</u><br>BREACH OF FIDUCIARY DUTY

114. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

115. Plaintiffs and Class members gave Defendants their Private Information in confidence, believing that Defendants would protect that information. Plaintiffs and Class members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiffs' and Class members' Private Information created a fiduciary relationship between Defendants and Plaintiffs and Class members.

116. In light of this relationship, Defendants have a fiduciary duty to act primarily for the benefit of Plaintiffs and Class members upon matters within the scope of their relationship, which includes safeguarding and protecting Plaintiffs' and Class members' Private Information.

117. Defendants breached that duty by failing to properly protect the integrity of the system containing Plaintiffs' and Class members' Private Information and otherwise failing to safeguard Plaintiffs' and Class members' Private Information that they collected.

118. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and Class members have suffered and will continue to suffer injury, including, but not limited to (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) the improper compromise, publication, and theft of their Private Information; (iii) deprivation of the value of their Private Information, for which there is a well-established national and international market;

(iv) lost time and money incurred, and future costs required, to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; (v) the continued risk to their Private Information which remains in Defendants' possession; and (vi) overpayment for the services that were received without adequate data security.

## COUNT IV
## BREACH OF IMPLIED CONTRACT

119. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

120. As a condition of their employment with Defendants, Plaintiffs and all other Class members provided their Private Information to Defendants and entered into implied contracts with Defendant.

121. Pursuant to these implied contracts, in exchange for the consideration and Private Information provided by Plaintiffs and Class members, Defendants agreed to, among other things, and Plaintiffs understood that Defendants would: (1) enter into employment relationships with Plaintiffs and Class members; (2) implement reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' Private Information; and (3) protect Plaintiffs' and Class members' Private Information in compliance with federal and state laws and regulations and industry standards.

122. The protection of Private Information was a material term of the implied contracts between Plaintiffs and Class members, on the one hand, and Defendants, on the other.

123. Plaintiffs and Class members performed their obligations under the implied contract when they provided Defendants with their Private Information.

124. Plaintiffs and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

125. Defendants breached their obligations under their implied contracts with Plaintiffs and Class members in failing to implement and maintain reasonable security measures to protect and secure their Private Information and in failing to implement and maintain security protocols and procedures to protect Plaintiffs' and Class members' Private Information in a manner that complies with applicable laws, regulations, and industry standards.

126. Defendants' breach of their obligations under their implied contracts with Plaintiffs and Class members directly resulted in the Data Breach and the injuries that Plaintiffs and all other Class members have suffered.

127. Defendants' breach of implied contracts injured Plaintiffs and all other Class members because (i) they provided their Private Information to Defendants as a condition of their employment, and performed services for Defendants' benefit, with the expectation of data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Private Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Private Information has been breached; (v) they were deprived of the value of their Private Information, for which there is a well-established national and international market; and (vi) lost time and money incurred, and future costs required, to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all other members of the Class, respectfully request that the Court enter judgment in his favor and against Defendants as follows:

A. Certifying that Class as requested herein, appointing the named Plaintiffs as Class representatives and the undersigned counsel as Class Counsel;

B. Requiring that Defendants pay for notifying the members of the Class of the pendency of this suit;

C. Awarding Plaintiffs and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

D. Awarding Plaintiffs and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiffs, on behalf of themselves and the Class, seeks appropriate injunctive relief designed to prevent Defendants from experiencing another data breach by adopting and implementing best data security practices to safeguard Private Information and to provide or extend additional credit monitoring services and similar services to protect against all types of identity theft and medical identity theft.

E. Awarding Plaintiffs and the Class prejudgment and post-judgment interest to the maximum extent allowable;

F. Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses, as allowable, together with their costs and disbursements of this action; and

G. Awarding Plaintiffs and the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 10, 2025

Respectfully submitted,

By: /s/ David M. Wilkerson
David M. Wilkerson
N.C. Bar No. 35742
Wilkerson Justus PLLC
P.O. Box 54
Asheville, NC 28802
Tel: 828-316-6902
dwilkerson@wilkersonjustus.com

Todd S. Garber
*Pro hac vice forthcoming*
FINKELSTEIN, BLANKINSHIP
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com

*Attorneys for Plaintiffs and the Proposed Class*